IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA MAZUR, for plaintiff and the class Members defined herein,<br>      Plaintiff,<br> vs.<br>MILO'S KITCHEN, LLC; DEL MONTE CORPORATION doing business as DEL MONTE FOODS; DOES 1-10,<br>      Defendants. | )<br>)<br>) Civil Action No. 12-1011<br>)<br>) Judge Cathy Bissoon<br>) Magistrate Judge Maureen P. Kelly<br>)<br>) Re: ECF No. 20<br>)<br>) |

## **REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

Plaintiff Lisa Mazur ("Plaintiff") initiated this action on July 19, 2012, by filing a class action Complaint on behalf of all customers who purchased chicken jerky dog treats manufactured, marketed, distributed and/or sold by Defendants Milo's Kitchen, LLC ("Milo's") and Del Monte Corporation d/b/a Del Monte Foods ("Del Monte") (collectively, "Defendants"). Plaintiff alleges that the treats were unsafe, defective, dangerous, culpably misrepresented as safe and healthy, did not conform to applicable implied and express warranties, and that, shortly after Plaintiff fed the treats to her dog, he became ill and had to be euthanized four days later.

Presently before the Court is a Motion to Dismiss Plaintiff's Putative Class Action Complaint ("the Motion") submitted on behalf of Defendants. ECF No. 20. For the reasons that follow, it is respectfully recommended that the Motion be granted as to Plaintiff's claim for unjust enrichment and denied in all other respects.

II.   REPORT

   A.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff contends that on or about December 12, 2011, she purchased a package of Milo's chicken jerky dog treats from a Giant Eagle store in New Kensington, Pennsylvania, which she fed to her dog "on occasion" during the month of January, 2012. ECF No. 1, ¶¶ 39, 41. Plaintiff alleged that as of January 31, 2012, her dog was seven years old and in good health, but on February 1, 2012, became ill and had to be taken to the veterinarian. Id. at ¶¶ 40, 42. The veterinarian diagnosed the dog with kidney failure and administered intravenous fluids for two days. Id. at ¶¶ 42, 43. The treatment failed to register any improvement and, consequently, Plaintiff took her dog to another veterinarian. Plaintiff contends that, on February 5, 2012, when two more days of fluids proved unfruitful, she was forced to have her dog euthanized. Id. at ¶¶ 43, 44.

Plaintiff avers that Defendants' products containing chicken jerky are neither wholesome nor nutritious but, rather, are unhealthy and unsafe and that contrary representations made by Defendants on the packaging of the chicken jerky treats and other dog treats marketed under the Milo's Kitchen brand, as well as on Milo's and Del Monte's web sites, are false. Id. at ¶¶ 17-22. Plaintiff specifically references Defendants' representations that: the contents are "wholesome & delicious;" they started making Milo's Kitchen dog treats because they believed dogs deserve treats made with the same quality of ingredients and care that their owners want in their food; the ingredients were chicken breast, glycerin, sugar, salt, natural flavors, and mixed tocopherals (a preservative and natural source of Vitamin E); "Milo's Kitchen® Home-Style Dog Treats are 100% real jerky, sausage slices, and meatballs;" our dogs aren't just the four-legged members of our family but are family and deserve a treat that lives up to the high standards we set for the

rest of our loved ones; our dogs deserve only the best with your food and deserve to enjoy snacks that not only look like jerky, sausage slices and meatballs, but actually are 100% real jerky, sausage slices and meatballs; and each piece of Milo's Kitchen® chicken Jerky is made with the quality and care your dog deserves without any artificial chicken flavors or filler ingredients. Id. at ¶¶ 18-20.

Plaintiff also avers that, although the FDA had issued warning as early as November 18, 2011, about dog illnesses after consuming chicken jerky dog treats that were made in China, where Defendants' treats are allegedly manufactured, Defendants' packaging does not warn of any danger of feeding its contents to dogs. Id. at ¶¶ 23, 24, 28. Although Plaintiff acknowledges that there is a reference to the FDA warnings on Milo's web site in the "frequently asked questions" section, she contends that it is not conspicuous and that the warnings are downplayed. Id. at ¶ 25. Moreover, Plaintiff contends that prior to February 1, 2012, Defendants had received numerous complaints, relating to more than 100 incidents, regarding dogs that became ill or died as the result of consuming dog treats manufactured in China that contained chicken jerky. Id. at ¶¶ 29-31.

Plaintiff alleges that Defendants marketed their products, in particular, chicken jerky dog treats, without first determining that they are safe and will not have a deleterious effect on dogs; that they knew there was a substantial risk of death or harm associated with their dog treats; that Defendants placed no warnings on their products or packaging; and that they intentionally concealed known facts concerning the safety of their dog treats in order to increase or maintain sales. Id. at ¶¶ 26, 27, 32, 33, 35. Plaintiff thus contends that Defendants' conduct recklessly or maliciously disregarded her rights and that of the putative class members for pecuniary gain. Id. at ¶ 38.

3

Plaintiff filed the instant Class Action Complaint ("the Complaint"), ECF No. 1, on July 19, 2012, bringing claims against Defendants for: breach of implied warranty under the Uniform Commercial Code ("UCC"), 13 Pa. C.S. § 2314, and the Magnuson-Moss Act (Count I); breach of express warranty under the UCC (Count II); violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1, *et seq.* (Count III); common law fraud (Count IV); unjust enrichment (Count V); negligence (Count VI); strict products liability -- defective design or manufacture (Count VII); and strict products liability -- failure to warn (Count VIII).

Defendants filed the instant Motion on September 24, 2012, to which Plaintiff responded on November 16, 2012. ECF Nos. 20, 33. Defendants filed a Reply in Further Support of Their Joint Motion to Dismiss Plaintiff's Putative Class Action Complaint on December 5, 2012, and Plaintiff's filed a Sur-Reply to Motion to Dismiss on December 13, 2012. ECF Nos. 34, 35-1. Categorizing Plaintiff's Sur-Reply as merely an "attempt to have the last word," Defendants filed a Sur-Sur-Reply on December 19, 2012. ECF No. 38. As such, the Motion is now ripe for review.

**B.     STANDARD OF REVIEW**

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902,

4

906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). The question is not whether the plaintiff will prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his or her claims. Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

**C.    DISCUSSION**

    **1.    Existence of a Defect and Proximate Cause**

Defendants first argue that the Complaint should be dismissed in its entirety because Plaintiff has failed to allege sufficient facts to plausibly establish that their product is defective in the first instance or that there is a causal connection between Plaintiff's dog becoming ill and its consumption of the chicken jerky treats.

> Under Pennsylvania law,[1] to maintain a claim for product liability under a theory of negligence or strict liability, a plaintiff must show, inter alia,

---

[1] It appears undisputed by the parties that Pennsylvania law governs this diversity action. See State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 (3d Cir. 2000).

5

> that the product at issue was defective and that the defect was the proximate cause of the injuries complained of. *See Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 396 (3d Cir. 1999); *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 696 A.2d 1169 (1997). A product is defective if it lacks any element necessary to make it safe for its intended use or has any feature which renders it unsafe for the intended use when it leaves the control of the manufacturer or seller. *See Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020, 1027 (1978). The word "defective" is a term of art and "[i]t is a judicial function to decide whether, under the plaintiff's averment of the facts, recovery would be justified...." *Id.* at 1026.

Carr v. Gillis Associated Industries, Inc., 227 F. App'x 172, 175 (3d Cir. 2007) (footnote added).

Further, "a defect, like any other fact, may be proven entirely by circumstantial evidence." Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121, 124 (3d Cir. 1984), *citing* Barris v. Bob's Drag Chutes & Safety Equip., Inc., 685 F.2d 94, 101 (3d Cir.1982). See Young v. MTD Products, Inc., 2008 WL 4155068, at *4 (W.D. Pa. Sept. 8, 2008), *citing* Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 415-16 (3d Cir 1999) ("[t]he Third Circuit, applying Pennsylvania law, permitted the jury to consider only circumstantial evidence to establish a product defect"). Thus, "the plaintiff need not even prove a specific defect; he may discharge his burden by showing an unexplained occurrence and eliminating all reasonable explanations for the occurrence other than the existence of a defect." Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d at 124. "Pennsylvania's 'malfunction theory,' . . . is simply a specific application of these general rules of proof." Id. "Other types of circumstantial evidence which tends to indicate that a defect existed in a product are 'the occurrence of the accident a short time after the sale,' the 'same accidents in similar products,' 'the elimination of other causes of the accident' and 'the type of accident that does not happen without a defect.'" Barris v. Bob's Drag Chutes & Safety Equipment, Inc., 685 F.2d at 101, *citing* Cornell Drilling Co. v. Ford Motor Co., 241 Pa. Super. 129, 140, 359 A.2d 822, 827 (1976), *overruled on other*

6

*grounds*, REM Coal Co. v. Clark Equip. Co., 386 Pa. Super. 401, 413 n.5, 563 A.2d 128, 134 n.5 (1989).

Under the malfunction theory, '[a] malfunction may itself, *in the absence of abnormal use and reasonable secondary causes*, be sufficient evidence of a defect to make the existence of a defect a jury question." Id. (internal citation omitted)(emphasis in original). See Santarelli v. BP America, 913 F. Supp. 324, 332-33 (M.D. Pa. 1996) (finding evidence that the plaintiff was the only member of her family to consume the salmon at issue, was the only one to become ill developing symptoms associated with a reaction to a marine toxin, and did so within one to two hours of consuming the fish, was sufficient to negate any reasonable secondary cause for her illness and entitled the plaintiff to proceed under the malfunction theory).

In the instant case, Plaintiff has alleged in the Complaint that she fed her dog Milo's chicken jerky dog treats on occasion during the month of January, 2012; that there were no other material changes in his diet; that as of January 31, 2012, her dog was seven years old and in good health, but on February 1, 2012, became ill; that the dog was diagnosed with kidney failure; and, after only four days, had to be euthanized. ECF No. 1, ¶¶ 39-44. Plaintiff has also alleged that the FDA had issued warning as early as November 18, 2011, about dog illnesses after consuming chicken jerky dog treats that were made in China, where Defendants' treats are allegedly manufactured, and that Milo acknowledges as much on its web site. Plaintiff also contends that prior to February 1, 2012, Defendants had received numerous complaints, relating to more than 100 incidents, regarding dogs that became ill or died as the result of consuming dog treats manufactured in China that contained chicken jerky. Id. at ¶¶ 23, 25, 29, 31. See ECF Nos. 1-2; 1-4.

These factual allegations, viewed in the light most favorable to Plaintiff, appear sufficient to permit the inference that a defect exists in Milo's chicken jerky treats and that the defect is the most likely explanation for the illness suffered by Plaintiff's dog by eliminating other reasonable causes. See Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d at 125. Plaintiff therefore has set forth sufficient facts to state a plausible claim for relief under the malfunction theory and Defendants' Motion in this regard is properly denied.

### 2.     Breach of Express Warranty (Count II)

At Count II of the Complaint, Plaintiff brings a claim for breach of express warranty under the Pennsylvania Uniform Commercial Code. Defendants alternatively argue that this claim should be dismissed because Plaintiff has failed to plead the requisite element of reliance.

Under the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa. C.S. § 2313(a)(1). Thus, to show a breach, the plaintiff must show that there was an express warranty and that the warranty became "part of the 'basis of the bargain.'" Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 394 (M.D. Pa. 2004), *quoting* Boyd v. Johnson & Johnson, 2002 WL 372959, at *2-3 (Pa. Com. Pl. Jan. 22, 2002). "In general, all of the statements of the seller become part of the basis of the bargain 'unless good reason is shown to the contrary.'" Id., *quoting* 13 Pa. C.S.A. § 2313, cmt. 8. See Sessa v. Riegle, 427 F. Supp. 760, 766 (E.D. Pa. 1977); Morningstar v. Hallett, 858 A.2d 125, 130 n.2 (Pa. Super. 2004). The buyer, however, must at least be aware of the seller's representation prior to the transaction's consummation. Id., *citing* 13 Pa. C.S.A., cmt. 3. Thus, in order to succeed on a claim for breach of express warranty, the plaintiff must

allege the statements made by the seller, reliance on those statements by the plaintiff, and damages.  Id.

Review of the Complaint in this case shows that Plaintiff has alleged that Defendants have made representations on the packaging of their dog treats and on their web sites indicating that: the contents of their dog treats are "wholesome & delicious;" they started making Milo's Kitchen dog treats because they believed dogs deserve treats made with the same quality of ingredients and care that their owners want in their food; the ingredients were chicken breast, glycerin, sugar, salt, natural flavors, and mixed tocopherals (a preservative and natural source of Vitamin E); "Milo's Kitchen® Home-Style Dog Treats are 100% real jerky, sausage slices, and meatballs;" our dogs aren't just the four-legged members of our family  but are family and deserve a treat that lives up to the high standards we set for the rest of our loved ones; our dogs deserve only the best with your food and deserve to enjoy snacks that not only look like jerky, sausage slices and meatballs, but actually are 100% real jerky, sausage slices and meatballs; and each piece of Milo's Kitchen® chicken Jerky is made with the quality and care your dog deserves without any artificial chicken flavors or filler ingredients.  RCF No. 1, ¶¶ 18-20.  Plaintiff has also alleged that "[n]o reasonable person would feed dog treats to their dogs knowing that there was a substantial risk of death or illness from doing so," and that she, in fact, purchased a package of Milo's Kitchen chicken jerky dog treats on or about December 12, 2011, which she subsequently fed to her dog.  Id. at ¶¶ 34, 36, 39, 41.  Further, Plaintiff has alleged, albeit in a conclusory fashion, that "Defendants' representations became a part of the basis of the bargain."  Id. at ¶ 62.

This Court finds that these allegations are sufficient, at least at this juncture, to raise Plaintiff's right to relief on a breach of warranty claim above the speculative level.  Plaintiff has

identified the statements made by Defendants regarding their product that constitutes the express warranty and alleged that she purchased the product. Absent a good reason showing otherwise, Defendants statements became part of the basis of the bargain. Indeed, Plaintiff has not only specifically alleged that the statements became part of the basis of the bargain but has also alleged that the fact that the dog treats might cause serious injury is material to pet owners and that no reasonable person would buy what Defendants themselves have categorized as "treats," without believing that they were of a certain quality and/or healthy for his or her animal. Defendants have not provided any reason for finding that their representations did not become a basis for the bargain and, hence, it can be inferred that Plaintiff believed the treats were healthy and safe as represented by Defendants. See Samuel-Bassett v. Kia Motors America, Inc., 613 Pa. 371, 412, 34 A.3d 1, 25 (2011), *cert. denied*, ___ U.S. ___, 133 S. Ct. 51 (2012) ("[a] written express warranty that is part of the sales contract is the seller's promise which relates to goods, and it is part of the basis of the bargain. 13 Pa. C.S. § 2313(a)(1). This statement of law is not qualified by whether the buyer has read the warranty clause and relied on it in seeking its application"); Erie Ins. Exchange v. Baker, 601 Pa. 355, 362, 972 A.2d 507, 511 (2008) (plurality) (plaintiff's failure to read contract not ground to nullify contract terms); Simeone v. Simeone, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990) ("[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood"). Plaintiff, therefore, is entitled to proceed with her claim for breach of express warranty and Defendants' Motion as to Count II of the Complaint should be denied.

### 3. Violation of UTPCPL and Fraud (Counts III & IV)

Defendants argue that Plaintiff's claims for violations of the UTPCPL and common law fraud brought at Counts III and IV of the Complaint should be dismissed because Plaintiff has

not alleged fraud with the requisite specificity and that these claims are nevertheless barred under the economic loss doctrine. Plaintiff's counter-argument is not entirely clear. Plaintiff initially argues that she need not plead the elements of common law fraud to state a claim under the UTPCPL because the statute was amended to include deceptive conduct as well as fraudulent conduct, but then concludes that because she has adequately pled that Defendants engaged in deceptive or misleading conduct that she has stated a claim under the UTPCL *and* for common law fraud. ECF No. 33, pp. 11-12. This notwithstanding, it appears that Plaintiff should be permitted to proceed with both of these claims.

The UTPCPL is Pennsylvania's consumer protection law which was enacted to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Trunzo v. Citi Mort., 876 F. Supp. 2d 521, 541 (W.D. Pa. 2012), *quoting* Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 151 (Pa. Super. 2012). See 73 Pa. Stat. Ann. § 201–3. The UTPCPL is to be liberally construed so as to promote the legislative goal of protecting consumers. Id., *citing* Bennett, 40 A.3d at 151.

In order to maintain a private right of action under the UTPCPL, a plaintiff must show that he: 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. Baynes v. George E. Mason Funeral Home, Inc., 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011). See 73 Pa. Stat. Ann. § 201–9.2(a). The plaintiff must offer evidence of one of the statutorily delineated "unfair methods of competition" found at 73 Pa. Stat. Ann. § 201–2(4), or evidence that fits the "catch-all provision" found at 73 Pa. Stat. Ann. § 201–2(4)(xxi). Id. The latter "catch-all provision," upon which Plaintiff relies, prohibits any "fraudulent or

11

deceptive conduct which creates a likelihood of confusion or of misunderstanding." Section 201–2(4)(xxi). Thus, a "plaintiff may succeed under the catch-all provision of the UTPCPL by satisfying the elements of common law fraud or by otherwise alleging deceptive conduct." Webb v. Envision Payment Solutions, Inc., 2011 WL 2160789, at *5 (W.D. Pa. May 31, 2011). See Sheet metal Workers Local 411 Health and Welfare Plan v. GlaxoSmithKilne, PLC., 737 F. Supp. 2d 380, 421 (E.D. Pa. 2010).

Defendants do not appear to dispute that Plaintiff has alleged deceptive conduct. Rather, Defendants take issue with Plaintiff's Complaint to the extent she seeks to hold Defendants liable for engaging in fraudulent conduct which requires Plaintiff to plead and prove the elements of common law fraud. To state a claim for common law fraud, the plaintiff must show: (1) a representation; (2) material to the transaction at issue; (3) made falsely, with either knowledge or reckless disregard of its falsity; (4) with the intent to misleading another person or inducing justifiable reliance; and (5) an injury caused by the reliance. Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d at 152 n.5, *citing* Bortz v. Noon, 556 Pa. 489, 499–500, 729 A.2d 555, 560 (1999). Noting that Fed. R. Civ. P. 9(b) requires that allegations of fraud are subject to a heightened pleading standard and must be stated with particularity, Defendants complain that Plaintiff has failed to identify any representations upon which she relied in purchasing the chicken jerky treats. See Grant v. Turner, 2012 WL 5928145, at 3 (3d Cir. Nov. 27, 2012), *quoting* Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) ("plaintiffs are required to 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged' [which] requires a plaintiff to plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means").

12

As previously discussed, Plaintiff has alleged in the Complaint that Defendants have made representations on the packaging of their dog treats and on their web sites indicating that: the contents of their dog treats are "wholesome & delicious;" they started making Milo's Kitchen dog treats because they believed dogs deserve treats made with the same quality of ingredients and care that their owners want in their food; the ingredients were chicken breast, glycerin, sugar, salt, natural flavors, and mixed tocopherals (a preservative and natural source of Vitamin E); "Milo's Kitchen® Home-Style Dog Treats are 100% real jerky, sausage slices, and meatballs;" our dogs aren't just the four-legged members of our family but are family and deserve a treat that lives up to the high standards we set for the rest of our loved ones; our dogs deserve only the best with your food and deserve to enjoy snacks that not only look like jerky, sausage slices and meatballs, but actually are 100% real jerky, sausage slices and meatballs; and each piece of Milo's Kitchen® chicken Jerky is made with the quality and care your dog deserves without any artificial chicken flavors or filler ingredients. RCF No. 1, ¶¶ 18-20. Plaintiff has also alleged that "[n]o reasonable person would feed dog treats to their dogs knowing that there was a substantial risk of death or illness from doing so," and that she, in fact, purchased a package of Milo's Kitchen chicken jerky dog treats on or about December 12, 2011, which she subsequently fed to her dog. Id. at ¶¶ 34, 36, 39, 41. Plaintiff has also alleged that "Defendants' representations became a part of the basis of the bargain." Id. at ¶ 62.

Based on these assertions, the Court has already found that Plaintiff has sufficiently identified the representations at issue and that she relied upon them in making her purchase. To be sure, these allegations are more than sufficient to place Defendants on notice of the precise misconduct with which they are charged. Plaintiff therefore has properly stated a claim under the UTPCPL and for common law fraud.

13

Defendants alternatively argue that regardless of whether Plaintiff seeks to hold Defendants liable for engaging in fraudulent conduct or deceptive conduct, which sounds in negligence, her UTPCPL claim is barred under the economic loss doctrine.

"The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002), *quoting* Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995). The purpose of the doctrine is to "prevent[ ] tort law from reallocating risks between parties who fairly have negotiated an arms-length contract." Id. at 679. Consequently, the doctrine limits plaintiffs to their contract claims "when loss of the benefit of a bargain is the plaintiff[s'] sole loss." Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir. 2001), *quoting* Duquesne Light, 66 F.3d at 618. To avoid application of the economic loss doctrine, plaintiffs must articulate "harm that is distinct from the disappointed expectations evolving solely from an agreement." Sunburst Paper, LLC v. Keating Fibre Int'l, Inc., 2006 WL 3097771, at *3 n.3 (E.D. Pa. Oct. 30, 2006) (citation omitted). See Werwinski v. Ford Motor Co., 286 F.3d at 671, *quoting* REM Coal Co. v. Clark Equip. Co., 386 Pa. Super. at 404, 563 A.2d at 129 ("economic] losses are based upon and flow from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased. Thus, the harm sought to be redressed is precisely that which a warranty action does redress . . . . negligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself"); Fleisher v. Fiber Composites, LLC, 2012 WL 5381381, at *9 (E.D. Pa. Nov. 2, 2012), *quoting* Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1276 (M.D. Pa.1990) (economic losses are defined as damages "for inadequate value, costs of repair and replacement of the defective

14

product, or consequential loss of property, without any claim of personal injury or damage to other property") (internal quotation omitted).

Here, contrary to Defendants' assertion, Plaintiff and the putative class members have not simply alleged economic damages. Although not always explicitly stated in terms of "damages," Plaintiff has alleged in the Complaint that as a result of consuming Milo's chicken jerky treats, her dog had to be euthanized; that damages in the form of illnesses and deaths were suffered by consumers as a result of Defendants' actions; that, as a direct an proximate cause of Defendants' conduct, Plaintiff and the class members suffered property damage, including the sickness and death of their pets; that as a direct and proximate cause of the unreasonably dangerous condition of the dog treats and Defendants failure to warn of the health risks involved, Plaintiff and others like her suffered property damage as well as economic loss. ECF No. 1, ¶¶ 39-44, 76, 89, 115, 126, 138. In addition, with respect to the class, it is alleged in the Complaint that the subclass consists of class members whose dogs have suffered harm or death due to the consumption of Defendants' products and that there are thousands of persons who purchased the dog treats at issue and hundreds of dogs that died as a result; that as a direct and proximate result of Defendants' conduct, Plaintiff and the class members suffered properly damage, including the sickness and death of their pets; and that as a direct and proximate cause of the unreasonably dangerous condition of the dog treats and Defendants failure to warn of the health risks involved, Plaintiff and others like her suffered property damage as well as economic loss. Id. at ¶¶ 54-55, 66-67, 80-81, 92-93, 105, 115, 117, 126, 128-29, 138, 140-41.

These allegations more than adequately set forth losses suffered by Plaintiff and the putative class members that are distinct from the disappointed expectations evolving solely from the purchase of Defendants' products; they clearly articulate property damage in the form of

harm to their pets. Accordingly, the economic loss doctrine does not apply and does not provide the basis for barring Plaintiff's UTPCPL claims.

### 4. Unjust Enrichment (Count V)

Plaintiff also brings a claim for unjust enrichment against Defendants at Count V of the Complaint alleging that, because Defendants profited from the sale of unsafe and unhealthy chicken jerky treats which caused Plaintiff economic and property damage, Defendants have been unjustly enriched. Defendant contend that this claim should be dismissed because it is clear from the Complaint that Plaintiff has an adequate remedy at law and, thus is not entitled to an equitable remedy, and because she has nevertheless failed to allege the elements necessary to state a claim for unjust enrichment.

Citing to In re Processed Egg Products Antitrust Litigation, 851 F. Supp. 2d 867, 915 (E.D. Pa. 2012), Plaintiff merely argues -- correctly so -- that at the pleading stage of the proceedings she is entitled to set forth claims in the alternative even if they are inconsistent with one another. See Indep. Enterprises Inc. v. Pittsburgh Water and Sewer Auth., 103 F.3d 1165, 1175 (3d Cir. 1997). Plaintiff, however, has failed to address Defendants' latter argument that she has failed to plead the necessary elements to succeed on a claim for unjust enrichment. It therefore appears that Plaintiff has conceded the issue.[2] Nevertheless, it is clear that:

> Under Pennsylvania law for quasi-contracts, a claim of unjust enrichment must allege the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. *Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137 (Pa. Commw. 2005). *See also, Torchia v. Torchia*, 346 Pa. Super. 229, 499 A.2d 581, 582 (1985)

---

[2] Although Defendants raised the alleged deficiency of Plaintiff's unjust enrichment claim in their opening brief they did not present any argument in support of that position until they filed their reply brief. See ECF Nos. 21, 34. Plaintiff, however, was granted the opportunity to file a sur-reply and failed to address Defendants' argument in that filing either. See ECF Nos. 35, 36.

> noting that "to sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." (internal quotation omitted). "The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." *Limbach v. City of Phila.*, 905 A.2d 567, 577 (Pa. Commw. 2006). "In order to recover, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." *Samuels v. Hendricks*, 300 Pa. Super. 11, 445 A.2d 1273, 1275 (1982) (emphasis in original), *quoting Meehan v. Cheltenham Twp.*, 410 Pa. 446, 189 A.2d 593, 595 (1963).

Global Ground Support, LLC v. Glazer Enterprises, Inc., 581 F. Supp. 2d 669, 675-76 (E.D. Pa. 2008). See Bral Corp. v. Johnstown America Corp., ___ F. Supp. 2d ___, 2013 WL 241066, at *15 (W.D. Pa. Jan. 22, 2013) (whether the doctrine of unjust enrichment applies depends on the unique factual circumstances of each case).

Here, it is apparent from Plaintiff's allegations in the Complaint that, while she is dissatisfied with the chicken jerky treats, she nevertheless purchased, received and used the product. It therefore cannot be said that the benefit bestowed on Defendants in the form of a profit from the sale was "wrongly secured." See Tatum v. Takeda Pharm. North America, Inc., 2012 WL 5182895, at *5 (E.D. Pa. Oct. 19, 2012) (finding that the plaintiff's claim that the defendants were aware of the risks of the drug but chose not to disclose them failed to state a claim for unjust enrichment because there was no allegation that the defendants "refused to provide a service or goods after Tatum provided defendants with a benefit"); In re Avandia Mktg., Sales Practices and Prod. Liab. Litig., 2011 WL 4007908, at * 2 (E.D. Pa. Sept. 7, 2011) (finding that the plaintiff's allegations that the product at issue was not safe, that defendant knew it was not safe and promoted it anyway, failed to state a claim for unjust enrichment where the plaintiff received the product for which he paid); Zafarana v. Pfizer, Inc., 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010) (the allegation that the defendants misled the plaintiffs into desiring a

17

product, which the defendants then provided to the plaintiffs in exchange for payment, did not create quasi-contract liability). Accordingly, Plaintiff has failed to state a claim for unjust enrichment and Defendants' Motion in this regard is properly granted.

### 5. Negligence and Strict Liability (Counts VI, VII & VIII)

Lastly, Defendants, without argument, state that Plaintiff's claims for negligence and strict liability should be dismissed because they too are barred by the economic loss doctrine. The Court has already found, however, that Plaintiff has alleged damages in addition to economic damages flowing from purchasing Defendants' product itself and that, consequently, the economic doctrine does not apply to the facts of this case. As such, Defendants' Motion in this regard is properly denied.

### D.  CONCLUSION

For the foregoing reasons, is respectfully recommended that Defendants' Motion to Dismiss Plaintiff's Putative Class Action Complaint, ECF No. 20, be granted as to Plaintiff's claim for unjust enrichment brought at Count V of the Complaint and denied in all other respects.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

          Respectfully submitted,

          /s/ Maureen P. Kelly
          MAUREEN P. KELLY
          UNITED STATES MAGISTRATE JUDGE

Dated: May 24, 2013

cc:    The Honorable Cathy Bissoon
       United States District Judge

       All counsel of record by Notice of Electronic Filing