IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Milo's Kitchen Dog Treats Consolidated Cases, | ) <br> ) <br> ) Civil Action No. 12-1011 <br> ) <br> ) Judge Cathy Bissoon <br> ) Magistrate Judge Maureen P. Kelly <br> ) <br> ) Re: ECF No. 68 <br> ) <br> ) |

## REPORT AND RECOMMENDATION

I.  **RECOMMENDATION**

Plaintiff Mary Emily Funke ("Plaintiff") initiated this action on October 16, 2012, by filing a class action Complaint on behalf of herself and all customers who purchased chicken jerky and beef jerky dog treats ("jerky treats") manufactured, marketed, and sold by Defendant Milo's Kitchen, LLC ("Milo's"), which is owned by Defendant Del Monte Corporation d/b/a Del Monte Foods ("Del Monte") (collectively, "Defendants"). Plaintiff alleges that Defendants have misrepresented the quality of the jerky treats, that they contain contaminants and that, within twenty-four hours of feeding the treats to her dog, it became sick and ultimately had to be euthanized.

Presently before the Court is a Motion to Dismiss ("the Motion") submitted on behalf of Defendants. ECF No. 68. For the reasons that follow, it is respectfully recommended that the Motion be granted as to Plaintiff's claim for unjust enrichment brought at Count IV of the Complaint and denied in all other respects.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff contends that she purchased a package of Milo's jerky treats in August of 2012, which she fed to her dog on September 2, 2012. C.A. No. 13-519: ECF No. 1, ¶¶ 14, 15. Plaintiff alleges that, as of that date, her dog was five years old and in good health, but within twenty-four hours of feeding it Milo's jerky treats, it became ill and had to be taken to the veterinarian. Id. at ¶¶ 13, 15, 16. The veterinarian initially prescribed antibiotics but began administering intravenous fluids after the dog's condition worsened. Id. at ¶¶ 16, 17. Three days later, Plaintiff's dog became so ill that Plaintiff was forced to have it euthanized. Id. at ¶ 18.

Plaintiff avers that Defendants' jerky treats are neither 100% jerky nor wholesome as advertised, but rather contain contaminants that sicken and/or kill dogs. Id. at ¶ 41. Plaintiff takes particular issue with Defendants' representations on the jerky treats' packaging and/or on the Defendants' websites stating that: the contents are "100 % Real - Wholesome and Delicious;" they started making Milo's Kitchen dog treats because they believed dogs deserve treats made with the same quality of ingredients and care that their owners want in their food; the ingredients in the jerky treats are chicken breast, glycerin, sugar, salt, natural flavors, and mixed tocopherals (a preservative and natural source of Vitamin E); the jerky treats are good for pets; "Milo's Kitchen Home-Style Dog Treats are 100% real jerky, sausage slices, and meatballs;" each piece of Milo's Kitchen Chicken Jerky "is made with whole fillets of 100% real jerky and the quality and care your dog deserves," without any artificial chicken flavors or filler ingredients; and that their products are made in compliance with specifications and procedures set forth by the U.S. Department of Agriculture, the Food & Drug Administration, and the Global Food Safety and Initiative. Id. at ¶¶ 38, 39.

Plaintiff also avers that the FDA issued releases on September 26, 2007, December 19, 2008, November 18, 2011 and July 18, 2012, cautioning consumers about illnesses and/or symptoms reported in dogs after consuming chicken jerky treats that were made in China where Defendants' treats are allegedly manufactured. Id. at ¶¶ 21, 23-28. The FDA releases also apprised consumers of the steps taken by the FDA to investigate the matter, which Congress has purportedly criticized. In particular, Plaintiff alleges that Congress has faulted the FDA's efforts in determining the source of the contamination and in warning pet owners of the potential dangers posed by the jerky treats. Id. at ¶¶ 29-36. Indeed, Plaintiff contends that Defendants' reassurances on their websites that neither the FDA nor the American Veterinarian Medical Association have been able to identify the cause of the illnesses or a connection between the illnesses and the jerky treats and that no contaminants have been found despite extensive testing are misrepresentations, is deceptive and/or misleading as the jerky treats contain contaminants that poison dogs. Plaintiff also contends that Milo's safety process does not ensure that the jerky teats are free from contaminants, and that the FDA's investigation, which failed to detect the contaminants, was fundamentally flawed. Id. at ¶ 41.

In addition, Plaintiff alleges that Defendants failed to adequately respond once the contamination was found in the jerky treats. Specifically, Plaintiff alleges that Defendants failed to conduct adequate quality control and testing of the jerky treats; failed to use proper manufacturing and production practices; failed to adequately investigate reports of dogs that became sick and/or died; failed to adequately warn consumers of the potential dangerous contaminants; marketed and sold the jerky treats without determining whether it was safe for dogs using deceptive advertising and packaging; and failed to take steps to remove the product

from the market once the unsafe condition of the jerky treats became suspected or known. Id. at ¶ 42.

Plaintiff filed the instant Class Action Complaint ("the Complaint"), on October 16, 2012, in the United States District Court for the Northern District of California, bringing claims against Defendants for violating the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (Count I); violating California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (Count II); violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (Count III); and for unjust enrichment (Count IV). See C.A. No. 13-519: ECF No. 1.

The case was transferred to this Court on April 10, 2013, and docketed at C.A. No. 13-519. Id. at ECF Nos. 29, 30. On August 6, 2013, an Order was issued consolidating this case with Civil Action Nos. 12-1011, 13-518, 13-709, and directing that all filings relative to the consolidated cases be filed at the above-captioned C.A. No. 12-1011 as the Lead Case. Id. at ECF No. 53. It was also ordered that any motions pending in the non-lead cases be re-filed at C.A. 12-1011. Id.

Defendants re-filed the instant Motion on August 9, 2013, to which Plaintiff responded on that same date. C.A. No. 12-1011: ECF Nos. 68, 74. Defendants filed a Reply Memorandum of Law in Support of Motion to Dismiss on August 14, 2013. Id. at ECF No. 76. As such, the Motion is ripe for review.

### B. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to

4

the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). The question is not whether the plaintiff will prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his or her claims. Oatway v. American Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

    **C.    DISCUSSION**

        **1.    Claims brought against Defendant Del Monte**

Defendants first argue that the claims brought against Del Monte must be dismissed because Plaintiff's allegations in the Complaint that Del Monte, as the parent company and

5

owner of Milo's, "has complete authority and control over Milo's conduct" fails to allege any actionable conduct by Del Monte and is insufficient to overcome the conventional maxim that a parent company and its subsidiary are to be treated as separate entities.

> As a general rule, a "parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods* ("Bestfoods"), 524 U.S. 51, 61 ... (1998) (internal citations omitted). "Only in unusual circumstances will the law permit a parent corporation to be held either directly or indirectly liable for the acts of its subsidiary." *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, ... 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008) (internal citation omitted). "Among the 'unusual circumstances' where law will hold a parent corporation liable for the acts of a subsidiary are: (1) where the circumstances of the organization of the two entities are such that the corporate form should be disregarded (often referred to as 'alter ego' liability); (2) where the subsidiary acts as an agent of the parent corporation; and (3) where the parent corporation aids, abets or ratifies the acts of the subsidiary corporation." *Id.* (internal citation omitted).

Bangkok Broad. & T.V. Co. v. IPTV Corp., 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010).[1] See Johnson v. American Cas. Co. of Reading Pennsylvania, 2011 WL 3739032, at *2 (N.D. Cal. Aug, 23, 2011) ("[a] parent company may also be held directly liable if it participates in the wrongdoing of its subsidiary"); Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 944-45 (S.D. Cal. 2007).

Here, Plaintiff has alleged in the Complaint that Del Monte is the parent company and owner of Milo's and that Del Monte has complete authority and control over Milo's conduct. C.A. No. 13-519: ECF No. 1, ¶¶ 8, 10. Plaintiff also asserts that Del Monte's website reflects that it is,

> one of the country's largest producers, distributors and marketers of premium quality, branded pet products and food products for the U.S. retail market, generating over $3.8 billion in net sales in fiscal 2013. With a powerful portfolio of brands, Del Monte products are found in eight out of ten U.S. households. Pet food and pet snacks brands include Meow Mix®, Kibbles 'n Bits®, Milk-Bone®, 9Lives®, Natural Balance®, Pup-Peroni®,

---

[1] The parties agree that California law applies. See Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 171 (3d Cir. 2011)(a transferee court is to apply the law of the transferor forum).

>    Gravy Train®, Nature's Recipe®, Canine Carry Outs®, Milo's Kitchen®
>    and other brand names.

Id. at ¶ 9. In addition, Plaintiff alleges that Del Monte (and/or Milo's) have misrepresented through packaging and on their websites that: the jerky treats are "100 % Real - Wholesome and Delicious;" they started making Milo's Kitchen dog treats because they believed dogs deserve treats made with the same quality of ingredients and care that their owners want in their food; the ingredients in the jerky treats are chicken breast, glycerin, sugar, salt, natural flavors, and mixed tocopherals (a preservative and natural source of Vitamin E); the jerky treats are good for pets; "Milo's Kitchen Home-Style Dog Treats are 100% real jerky, sausage slices, and meatballs;" each piece of Milo's Kitchen Chicken Jerky "is made with whole fillets of 100% real jerky and the quality and care your dog deserves" without any artificial chicken flavors or filler ingredients; and that their products are made in compliance with specifications and procedures set forth by the U.S. Department of Agriculture, the Food & Drug Administration, and the Global Food Safety and Initiative. Id. at ¶¶ 38, 39. See id. at ¶ 3.

These allegations demonstrate that Plaintiffs' claims against Del Monte are not based solely on its parent-subsidiary relationship with Milo's but speak to Del Monte's own conduct and/or participation in the wrongdoing. Accordingly, insofar as Defendants ask that the claims brought against Del Monte be dismissed, the Motion is properly denied.

## 2. Claims brought under California's Consumer Protection Statutes

As previously discussed, Plaintiff has brought claims under the CLRA, the FLA and the UCL, all of which are based on Plaintiff's assertion that Defendants misrepresented the wholesomeness of the jerky treats and misled consumers into believing they were safe. Defendants argue that these claims should be dismissed because many of the alleged misrepresentations cited by Plaintiff are nothing more than "mere puffery" upon which no

reasonable buyer would rely, and that they are otherwise inadequately pled under Federal Rule of Civil Procedure 9(b).

### a. Mere Puffery

Defendants initially argue that "many" of the alleged misrepresentations that Plaintiff attributes to Defendants are not actionable because they are mere puffery as opposed to a statement of fact upon which a consumer would rely.

At issue is whether the alleged misrepresentation regarding a product's characteristics is a general, unverifiable claim that is unlikely to induce consumer reliance or one that is a quantifiable statement of fact that has a tendency to deceive the reader. Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., 911 F.2d 242, 245-46 (9th Cir. 1990). See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008), *quoting* Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., 911 F.2d at 245-46 ("[u]ltimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. 'The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions'"). See also Edmundson v. Procter & Gamble Co., 537 F. App'x 708, 709 (9th Cir. 2013).

Here, Defendants do not identify a particular misrepresentation cited in the Complaint that purportedly constitutes "mere puffery" but, rather, cites generally to paragraphs 38 and 39 of the Complaint wherein Plaintiff cites certain representations made on the jerky treat's packaging and on Defendants' respective websites. As set forth above, those representations include that: the contents are "100 % Real - Wholesome and Delicious;" they started making Milo's Kitchen dog treats because they believed dogs deserve treats made with the same quality of ingredients

and care that their owners want in their food; the ingredients are chicken breast, glycerin, sugar, salt, natural flavors, and mixed tocopherals (a preservative and natural source of Vitamin E); the jerky treats are good for pets; "Milo's Kitchen Home-Style Dog Treats are 100% real jerky, sausage slices, and meatballs;" our dogs deserve only the best with your food and deserve to enjoy snacks that not only look like jerky, sausage slices and meatballs, but actually are 100% real jerky, sausage slices and meatballs; each piece of Milo's Kitchen chicken Jerky is made with whole fillets of 100% real jerky and the quality and care your dog deserves without any artificial chicken flavors or filler ingredients; and that their products are made in compliance with specifications and procedures set forth by the U.S. Department of Agriculture, the Food & Drug Administration, and the Global Food Safety and Initiative. Id. at ¶¶ 38, 39.

Other than the statements regarding why Defendants started making Milo's jerky treats and that they are "good for pets," each of the cited alleged misrepresentations appear to be verifiable facts and sufficiently specific to induce customer reliance. Consequently, they do not constitute "mere puffery." See Williams v. Gerber Products Co., 552 F.3d 934, 939 n.3 (9th Cir. 2008) (finding that that the defendants statement that Fruit Juice Snacks is made with "fruit juice and other all natural ingredients" and is "nutritious" was actionable); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) (company's advertisement that its slow-growing grass required "50% Less Mowing" was an actionable statement of fact); Sterling Drug, Inc. v. F.T.C., 741 F.2d 1146, 1151–53 (9th Cir. 1984) (company's claim that its brand of aspirin was consistently better than other brands "for purity, stability, and speed of disintegration" was properly determined not to be puffery); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (finding that the term "wholesome" could arguably mislead a reasonable consumer and thus cannot be deemed to constitute non-actionable puffery).

9

Further, even if Defendants' statements regarding why they started making Milo's jerky treats and that they are "good for pets," constitute puffery standing alone, those statements contribute "to the deceptive context of the packaging as a whole." In re Ferrero Litig., 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011), *quoting* Williams v. Gerber Products Co., 523 F.3d at 939 n.3. As such, these statements cannot be divorced from the specific representations on the jerky treats packaging and on Defendants' websites that have the potential to deceive and thus remain viable. See id. See also Franklin Fueling Sys., Inc. v. Veeder–Root Co., 2009 WL 2462505, at *7 (E.D. Cal. 2009) ("[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery").

        **b.**        **The Pleading Requirements of Fed. R. Civ. P. 9(b)**[2]

        **(1) The Falsity of Defendants' Representations**

Defendants argue that Plaintiff's CLRA, FAL and UCL claims should be dismissed because Plaintiff has not plead the falsity of Defendants' alleged misrepresentations with the specificity required under Federal Rule of Civil Procedure 9(b).

> Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Fraud allegations must "be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).
>
> To meet this standard, the pleading must provide "the who, what, when, where, and how of the misconduct charged." *Id.* (citations and

---

[2] Although Plaintiff initially argues that Rule 9(b)'s heightened pleading standard does not apply to her claims brought pursuant to the CLRA, the FAL or the UCL, the United States Court of Appeals for the Ninth Circuit has held otherwise. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (reiterating its earlier ruling in Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102-05 (9th Cir, 2003), that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL). Moreover, the Court in Kearns found that where a claim sounds in fraud, as Plaintiff's claims do, "the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b)," thereby rejecting the plaintiff's argument that the District Court should have evaluated his claim under the "unfairness" prong of the UCL as a separate claim for relief and without imposing the heightened pleading standard. Id. at 1127 (emphasis in original).

> quotations omitted). A plaintiff must set forth "what is false or misleading about a statement and why it is false." *Id.* at 1106 (citations and quotations omitted).

True v. American Honda Motor Co., 520 F. Supp. 2d 1175, 1179 (C.D. Cal. 2007). See Kearns v. Ford Motor Co., 567 F.3d at 1124.

Here, Plaintiff has alleged that Defendants (the who), have engaged in a continuous course of conduct since 2007 (the when), whereby they have made misrepresentations on the jerky treat packaging and on their websites (the where), that their products are wholesome, safe, and that they otherwise have characteristics and qualities that they do not have which is likely to mislead the public (the what), and that these misrepresentations are false because many of the packages of jerky treats contain contaminants (the how). See C.A. No. 13-519: ECF No. 1, ¶¶ 3, 4, 38, 39, 41, 62-65, 67, 71, 76, 77, 78, 85, 88, 89, 90. These allegations appear specific enough to apprise Defendants of the particular misconduct with which they are being charged and thus satisfy the heightened pleading standard set forth in Rule 9(b). See Ang v. Bimbo Bakeries USA, Inc., 2013 WL 5407039, at *3 (N.D. Cal. Sept. 25, 2013) (finding that, under the approach taken by courts in the Northern District of California, similar allegations regarding food misbranding and mislabeling sufficient under Rule 9(b)).

### (2) Reliance

Defendants also argue that Plaintiff's claims brought pursuant to the CLRA, the FLA and the UCL should be dismissed because she has failed to adequately plead reliance with the required specificity.

As previously discussed, in order to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), the who, what, when, where, and how of the misconduct charged must be alleged, as well as what is false or misleading about a statement and why it is false. True v. American

Honda Motor Co., Inc., 520 F. Supp. 2d at 1179. In addition, the plaintiff must also specifically allege that the fraudulent conduct caused them injury. In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d 880, 925 (C.D. Cal. 2012), *citing* In re Tobacco II Cases, 46 Cal. 4th 298, 327, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009). That is, a plaintiff must show that "the misrepresentation was an 'immediate cause' of injury and that, but for the fraudulent statements, 'the plaintiffs in all reasonable probability would not have engaged in the injury-producing conduct.'" Id., *quoting* In re Tobacco II, 46 Cal.4th at 326. See True v. American Honda Motor Co., Inc., 520 F. Supp. 2d at 1182 (under California law, "causation, in the form of reliance" is an essential element of claims for false advertising). See also In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d at 925, *quoting* Kwikset Corp. v. Superior Court, 51 Cal. 4th 298, 326–27, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011) ("[b]ecause 'reliance is the causal mechanism of fraud,' a plaintiff 'proceeding on a claim of misrepresentation . . . must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions'").[3] "This threshold is met where a plaintiff alleges 'he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made.'" In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d at 925, *quoting* Kwikset Corp. v. Superior Court, 51 Cal. 4th at 327 n.10. "A plaintiff is entitled to a presumption of reliance, however, when the alleged misrepresentation is 'material. . . . 'A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the

---

[3] "To state a claim for fraud, a plaintiff must allege: (1) a misrepresentation by false representation, concealment, or nondisclosure, (2) defendant's knowledge of the falsity, (3) defendant's intent to induce reliance, (4) justifiable reliance by Plaintiff, (5) and resulting damage to Plaintiff, all to the satisfaction of Rule 9(b)." Kearns v. Ford Motor Co., 567 F.3d at 1126.

12

plaintiff would not have acted as he did.'" True v. American Honda Motor Co., 520 F. Supp. 2d at 1182, *quoting* Caro v. Proctor & Gamble Co., 18 Cal. App. 4th 644, 668 (1993). See id. at 1182-83 (the "inferred reliance principal," where the misrepresentation is material, applies to the reliance/causation element under the CLRA, the UCL and the FAL).

In the instant case, Plaintiff has alleged in the Complaint that she "purchased Milo's Jerky [for] her personal and family use, to feed her dog Rocky, in reliance on Defendants' marketing claims, both on the product label and on Defendants' websites, with respect to the efficacy, qualities, and safety;" that "[l]ike Plaintiff, members of the putative Class and Subclasses would not have purchased Milo's Jerky if Defendants had disclosed the truth and all facts concerning Milo's Jerky;" that "Plaintiff and members of the Class and Subclasses purchased Milo's Jerky in reliance on Defendants' marketing claims, as described above;" and that "Plaintiff purchased Milo's Jerky in reliance on Defendants' marketing claims on both the product labels and Defendants' websites." C.A. No. 13-519: ECF No. 1, ¶¶ 62, 67, 74, 83. Plaintiff has also set forth the specific marketing claims upon which she and the putative class members allegedly relied in purchasing the jerky treats. Id. at ¶¶ 38, 39. See also id. at 55, 72, 81. In this Court's view, these assertions provide a sufficient basis to infer that Plaintiff purchased the jerky treats because of Defendants' alleged misrepresentations or, stated another way, would not have purchased the jerky treats absent Defendants' misrepresentations. Plaintiff therefore has satisfied the pleading requirements of Fed. R. Civ. P. 9(b) and Defendants' Motion in this regard is properly denied. See True v. American Honda Motor Co., 520 F. Supp. 2d at 1183 (finding that the plaintiff's allegations that the defendant's advertisement induced the plaintiff to purchase the vehicle were sufficient at the pleading stage as the plaintiff's knowledge and state of mind are not subject to Rule 9(b)).

13

### 3. Unjust Enrichment (Count IV)

Plaintiff also brings a claim for unjust enrichment against Defendants at Count IV of the Complaint alleging that, because Defendants have retained the revenues derived from the sale of Milo's jerky treats to Plaintiff and members of the putative class having misrepresented the qualities, characteristics and safety of the jerky treats, Defendants have been unjustly enriched. Defendants contend that this claim should be dismissed because unjust enrichment is not a separate cause of action under California law but is a theory of recovery, and that Plaintiff's claim is nevertheless duplicative of her statutory claims. Plaintiff, on the other hand, has cited to several cases that have found claims for unjust enrichment to be synonymous with claims for restitution and have permitted such claims to proceed. See Hirsch v. Bank of America, 107 Cal. App. 4th 708 (2003); Dinosaur Dev., Inc. v. White, 216 Cal. App. 3d 1310 (1989); DSU Aviation, LLC v. PCMT Aviation, LLC, 2007 WL 3456564 (N.D. Cal. Nov. 14, 2007).

It cannot be disputed that there is little consensus amongst either state or federal courts as to whether California recognizes a separate cause of action for unjust enrichment. While some courts have allowed the claim to go forward based on a quasi-contract theory, others -- and seemingly the majority -- have declined to recognize a claim for unjust enrichment either because the claim is, in essence, one for restitution or because it is duplicative of the plaintiff's statutory or tort claims. See Ogden v. Bumble Bee Foods, LLC, 2014 WL 27527, at *12 (N.D. Cal. Jan. 2, 2014) (citing cases); Anderson v. U.S. Bank, N.A., 2014 WL 47087, at *8 (N.D. Cal. Jan. 6, 2014) (same); Pardini v. Unilever United States, Inc., ___ F.Supp.2d ___, 2013 WL 3456872, at *8 (N.D. Cal. July 9, 2013) (same); Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (same). The undersigned finds the latter line of cases persuasive particularly as Plaintiff has not argued that the claim should go forward under a quasi-contract

theory, and it is evident from the allegations in the Complaint that Plaintiff is seeking restitution for the loss of monies incurred by her and the putative class members as a result of purchasing Milo's jerky treats. See C.A. No. 13-519: ECF No. 1, ¶¶ 43, 62, 69, 74, 79, 83, 97, 100, 101. Moreover, not only does Plaintiff's claim of unjust enrichment rest on the same facts upon which her statutory claims are based but each of the statutes under which she is proceeding provide for restitution. See Ogden v. Bumble Bee Foods, LLC, 2014 WL 27527, at *12, *quoting* Colgan v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 696 (2006) ("The UCL, FAL, and CLRA authorize courts to award restitution as 'may be necessary to restore to any person in interest any money or property ... which may have been acquired by means of [an] unfair or deceptive act'"). Under these circumstances, it appears that Plaintiff's claim for unjust enrichment is properly dismissed.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss submitted on behalf of Defendants, ECF No. 68, be granted as to Plaintiff's claim for unjust enrichment brought at Count IV of the Complaint and denied in all other respects.[4]

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule

---

[4] The Court notes here that as a final argument, presented on the second to last page of their Memorandum of Law in Support of Motion to Dismiss, Defendants argue that discovery in this case should be stayed pending the Court's decision on the very Motion to Dismiss in which it presented the argument. See C.A. No. 12-1011: ECF No. 69, p. 12. The issue therefore was not before the Court until it was poised to address the Motion to Dismiss - five months after it was filed. It seems the better course would have been to file a separate motion so that the Court could address the issue in a timely manner since, with the filing of this Report and Recommendation, the issue is largely moot. That having been said, it appears that Defendants' argument is misplaced. Defendants' only basis for a stay of discovery in this case is that this Court found a stay warranted in the Lead Case (Mazur) pending the resolution of a motion to dismiss filed by Defendants. See id. at ECF No. 44. The Memorandum Order issued by the undersigned to which Defendants refer, however, addressed the Plaintiff's Motion for Leave to *Commence* Limited Discovery which was denied. Id. See id. at ECF No. 39 (emphasis added). Because discovery had not yet begun there was, in essence, nothing to stay. Accordingly, this Court's concededly superfluous language at the end of the Memorandum Order staying all discovery pending the resolution of the pending motion to dismiss, does not provide the basis for staying discovery in this case which, like in Mazur, has yet to begin.

15

established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                                              Respectfully submitted,

                                              <u>/s/ Maureen P. Kelly</u>
                                              MAUREEN P. KELLY
                                              UNITED STATES MAGISTRATE JUDGE

Dated: February 11, 2014

cc:       The Honorable Cathy Bissoon
          United States District Judge

          All counsel of record by Notice of Electronic Filing