IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Milo's Kitchen Dog Treats Consolidated Cases, | ) ) ) Civil Action No. 12-1011 ) ) Judge Cathy Bissoon ) Magistrate Judge Maureen P. Kelly ) ) Re: ECF No. 70 ) ) |

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

Plaintiff Maxine S. Ruff ("Plaintiff") initiated this action on October 10, 2012, by filing a class action Complaint on behalf of herself and all customers who purchased chicken jerky dog treats ("jerky treats") manufactured, marketed, and sold by Defendants Del Monte Corporation d/b/a Del Monte Foods ("Del Monte"), and its wholly owned subsidiary, Milo's Kitchen, LLC ("Milo's") (collectively, "Defendants"). Plaintiff alleges that the treats are defectively manufactured, unsafe and dangerous and that, within three days of feeding the treats to her dog, it died.

Presently before the Court is a Motion to Dismiss ("the Motion") submitted on behalf of Defendants. ECF No. 70. For the reasons that follow, it is respectfully recommended that the Motion be granted as to Plaintiff's claim for unjust enrichment brought at Count VI of the Complaint and denied in all other respects.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff contends that she purchased a package of Milo's jerky treats which she fed to her healthy, six year old dog between November 12, 2011 and November 23, 2011. C.A. No. 13-518: ECF No. 1-1, ¶¶ 3, 4, 29, 30. Plaintiff alleges that without any other material changes in her dog's diet, it became ill and had to be taken to the veterinarian. Id. at ¶ 4. The veterinarian determined that Plaintiff's dog was experiencing kidney failure and within three to seven days of consuming the jerky treats, it died. Id. at ¶¶ 4, 7, 19, 30.

Plaintiff takes issue with Defendants' representations on the packaging of the jerky treats, as well as on Milo's website, which state that the product is "100% REAL;" that it is being made with "the quality and care your dog deserves;" that there are no artificial ingredients. Just meaty . . . 100% real jerky;" that the treats contain no artificial colors, flavors or fillers; and that the jerky treats are "wholesome natural treats." Id. at ¶¶ 14-16. Plaintiff alleges that despite these representations, the jerky treats are contaminated and dangerous as evidenced by statements issued by the FDA that dogs that have consumed the jerky treats have suffered from a decrease in appetite and activity, vomiting, diarrhea, and increased water consumption and/or increased urination. According to Plaintiff, the FDA has also noted that lab reports may indicate kidney problems, and that dogs have died from eating the jerky treats -- both of which occurred with Plaintiff's dog. Id. at ¶¶ 17-19. Although Defendants have acknowledged the FDA's warnings on Milo's website, Plaintiff contends that Defendants' response to the FDA's warnings is inadequate and misleading in that it makes no mention of the major symptoms identified in the FDA notice but only lists the minor symptoms that could develop from consuming the jerky treats and that, despite the increased number of complaints associated with the consumption of

the jerky treats since 2011, Defendants emphasize that the FDA has not identified a connection between the jerky treats and the illnesses that have been reported while at the same time toting the testing process and safety precautions they have devised. Id. at ¶¶ 22-24. In addition to misrepresenting the dangers of the jerky treats, Plaintiff alleges that Defendants have generally failed to warn Plaintiff and the putative class of the dangers of the jerky treats and, in particular, have failed to put a warning on the jerky treat packaging or on their websites. Plaintiff also complains that Defendants have not only failed to recalled the jerky treats but have intentionally concealed the known facts regarding the safety of their product in order to increase or maintain sales thereby breaching their duty to ensure that the jerky treats are safely manufactured and to apprise the public of the FDA's warnings associated with the treats. Id. at ¶¶ 20, 25, 26. Plaintiff contends that neither she nor any reasonable person would have bought the jerky treats if they had known of the material risk of serious harm to their pets, which Plaintiff claims she did not learn of until after her dog died. Id. at ¶¶ 27, 28.

Plaintiff filed the instant Class Action Complaint ("the Complaint"), on October 10, 2012, in the United States District Court for the Northern District of California, bringing claims against Defendants for violating California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (Count I); North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen Stat. § 75-1.1 (Count II); California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (Count III); the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (Count IV); and the Magnum-Moss Warranty Act, 15 U.S.C. § 2301 (Count V). Plaintiff also brings claims for unjust enrichment (Count VI); negligence (Count VII); strict product liability (Count VIII); and declaratory relief (Count IX). See C.A. No. 13-518: ECF No. 1-1.

The case was transferred to this Court on April 10, 2013, and docketed at C.A. No. 13-518. ECF Nos. 40, 41. On August 6, 2013, an Order was issued consolidating this case with Civil Action Nos. 12-1011, 13-519, 13-709, and directing that all filings relative to the consolidated cases be filed at the above-captioned C.A. No. 12-1011 as the Lead Case. Id. at ECF No. 60. It was also ordered that any motions pending in the non-lead cases be re-filed at C.A. 12-1011. Id.

Defendants re-filed the instant Motion at C.A. 12-1011 on August 9, 2013, to which Plaintiff responded on August 12, 2013. C.A. No. 12-1011: ECF Nos. 70, 75. Defendants filed a Reply Memorandum of Law in Support of Motion to Dismiss on August 14, 2013. Id. at ECF No. 77. As such, the Motion is ripe for review.

**B.  STANDARD OF REVIEW**

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim

4

to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). The question is not whether the plaintiff will prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his or her claims. Oatway v. American Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

### C. DISCUSSION

#### 1. The Existence of a Defect and Proximate Cause

Defendants first argue that the Complaint should be dismissed in its entirety because Plaintiff has failed to allege sufficient facts to plausibly establish that their product is defective or that there is a causal connection between Plaintiff's dog becoming ill and its consumption of the jerky treats.

It is undisputed that under California law, "'a defect in manufacture or design must be affirmatively established, and an inference of defect solely from the fact of an accident cannot be drawn.'" Notmeyer v. Stryker Corp., 502 F. Supp. 2d 1051, 1059 (N.D. Cal. 2007), *quoting* Hinckley v. La Mesa R.V. Center, Inc., 158 Cal. App. 3d 630, 642, 205 Cal. Rptr. 22 (Cal. Ct. App. 1984).[1] This rule, however, "does not preclude a plaintiff from proving a manufacturing defect using only circumstantial evidence." Id. See Jian Wu v. Ean Holdings, LLC, 2014 WL

---

[1] It is undisputed by the parties that California law applies. See Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 171 (3d Cir. 2011)(a transferee court is to apply the law of the transferor forum).

117338, at *4 (N.D. Cal. Jan. 10, 2014), *quoting* Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121, 124 (3d Cir. 1984) (recognizing the malfunction theory which "allows [a plaintiff] to show that a defect is the most likely explanation for an accident by eliminating other reasonable explanations").

In the instant case, Plaintiff has alleged in the Complaint that she purchased a package of Milo's jerky treats which she fed to her healthy, six year old dog between November 12, 2011 and November 23, 2011; that without any other material changes in her dog's diet, it became ill and had to be taken to the veterinarian; that the veterinarian determined that Plaintiff's dog was experiencing kidney failure and within one week of consuming the jerky treats, it died; that since November of 2011, the FDA has logged over 900 reports by veterinarians and pet owners of illnesses and deaths of their pets after feeding them jerky treats; that the FDA has issued statements that dogs have suffered from a decrease in appetite and activity, vomiting, diarrhea, and increased water consumption and/or increased urination after consuming the jerky treats; and that the FDA has indicated that lab reports may indicate kidney problems, and that dogs have died from eating the jerky treats -- precisely what happened with Plaintiff's dog. C.A. No. 13-518: ECF No. 1-1, ¶¶ 2, 3, 4, 7, 17-19, 29, 30.

These factual allegations, viewed in the light most favorable to Plaintiff, appear sufficient at this stage of the litigation to permit the inference that a defect existed in the jerky treats and that the defect is the most likely explanation for the illness suffered by Plaintiff's dog. See Jian Wu v. Ean Holdings, LLC, 2014 WL 117338, at *4.

### 2. California's Consumer Protection Statutes

As previously discussed, Plaintiff has brought claims under the CLRA, the FLA and the UCL at Counts I, III and IV of the Complaint, all of which are based on Plaintiff's assertion that

6

Defendants misrepresented the wholesomeness of the jerky treats and misled consumers into believing they were safe. Defendants argue that these claims should be dismissed because Plaintiff does not have standing, that many of the alleged misrepresentations cited by Plaintiff are nothing more than "mere puffery" upon which no reasonable buyer would rely, and because they are otherwise inadequately pled under Federal Rule of Civil Procedure 9(b).

### a. Standing

Citing to Gentges v. Trend Micro Inc., 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012), for the proposition that "the UCL and CLRA do not reach claims of non-California residents arising from conduct occurring entirely outside of California," Defendants argue that Plaintiff has no standing to bring claims arising under California's consumer protection laws because she is not a California resident and has not otherwise established a connection to California. See C.A. No. 13-518: ECF No. 71, p. 9.

The district courts in California, however, have repeatedly held that it is appropriate to apply California law where the Defendant is a California corporation and some or all of the alleged conduct emanates from California and that applying California law is only impermissible where the alleged misconduct has no connection to California. Gross v. Symantec Corp., 2012 WL 3116158, at *6 (N.D. Cal. July 31, 2012), *quoting* Red v. Kraft Foods, Inc., 2011 WL 4599833, at *6 (C.D. Cal. Sept. 29, 2011), and Sajfr v. BBG Commc'ns, Inc., 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012). See Parkinson v. Hydundai Motor Am., 258 F.R.D. 580, 598 (C.D. Cal. 2008) (permitting a non-resident plaintiff to bring a UCL claim against car distributor where the plaintiff alleged that the defendant's relevant operations including its headquarters and marketing department were located in California and from where the alleged decisions controlling the non-disclosure at issue emanated); Fulford v. Logitech, Inc., 2008 WL 4914416,

7

at *1 (N.D. Cal. Nov. 14, 2008) (finding that the plaintiff met his burden of showing that the conduct complained of occurred in California and that the alleged misrepresentations were disseminated from California having demonstrated that the defendant's headquarters and marketing staff are located in California).  See also Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 242, 110 Cal. Rptr. 2d 145 (2001), *quoting*, Cal. Bus. & Prof. Code § 17500 (the FLA "expressly applies to claims by out-of-state [plaintiffs] deceived by representations 'disseminated from' the state of California").

  Here, Plaintiff's claims brought under the California consumer protection statutes are not based just on the fact that she purchased the jerky treats, which took place in North Carolina, but are premised on Defendants' conduct in allegedly misrepresenting the ingredients and wholesomeness of the jerk treats which emanated from their place of business in California. Plaintiff has alleged that Del Monte's principle executive offices and corporate headquarters are located in California; that Milo's is a limited liability corporation doing business in California; that Defendants' challenged conduct emanated from California; that California serves as the headquarters for Del Monte's marketing in the United States and provides all customer support; and that all corporate decisions regarding Defendants' marketing, sales and other polices were directed from or emanated from Del Monte's representatives in California.  C.A. No. 13-518: ECF No. 1-1, ¶¶ 8, 9, 35, 36.  These assertions, coupled with Plaintiff's allegations that the misrepresentations and omissions at issue were marketed by Defendants on the jerky treats' packaging as well as Defendants' websites, permits the inference that the conduct of which Plaintiff complains occurred within California.  As such, Defendants' Motion in this regard is properly denied.

8

### b. Mere Puffery

Defendants also argue that "many" of the alleged misrepresentations that Plaintiff attributes to Defendants are not actionable because they are mere puffery as opposed to a statement of fact upon which a consumer would rely.

At issue is whether the alleged misrepresentation regarding a product's characteristics is a general, unverifiable claim that is unlikely to induce consumer reliance or one that is a quantifiable statement of fact that has a tendency to deceiver the reader. Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., 911 F.2d 242, 245-46 (9th Cir. 1990). See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008), *quoting* Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., 911 F.2d at 245-46 ("[u]ltimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. 'The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions'"). See also Edmundson v. Procter & Gamble Co., 537 F. App'x 708, 709 (9th Cir. 2013).

Defendants in this case have not identified a particular misrepresentation cited in the Complaint that purportedly constitutes "mere puffery" but, rather, cites generally to paragraphs 15 and 56 of the Complaint wherein Plaintiff cites certain representations made on the jerky treat's packaging and on Defendants' websites, including that they believed dogs deserve treats made with the same quality of ingredients and care that their owners want in their food; that the treats do not contain any artificial colors, artificial flavors or fillers; that Milo's makes "100% real home-style dog treats;" and that the jerky treats are made with the love and care "your dog deserves." C.A. No. 13-518: ECF No. 1-1, ¶¶ 15, 16.

9

Other than the latter statement that Milo's jerky treats are made with love and care, each of the cited alleged misrepresentations appear to be verifiable facts and sufficiently specific to induce customer reliance. Consequently, they do not constitute "mere puffery." See Williams v. Gerber Products Co., 552 F.3d 934, 939 n.3 (9th Cir. 2008) (finding that that the defendants statement that Fruit Juice Snacks is made with "fruit juice and other all natural ingredients" and is "nutritious" was actionable); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) (company's advertisement that its slow-growing grass required "50% Less Mowing" was an actionable statement of fact); Sterling Drug, Inc. v. F.T.C., 741 F.2d 1146, 1151–53 (9th Cir. 1984) (company's claim that its brand of aspirin was consistently better than other brands "for purity, stability, and speed of disintegration" was properly determined not to be puffery); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (finding that the term "wholesome" could arguably mislead a reasonable consumer and thus cannot be deemed to constitute non-actionable puffery).

Further, even if Defendants' statements that the jerky treats are made with love and care constitute puffery standing alone, those statements contribute "to the deceptive context of the packaging as a whole." In re Ferrero Litig., 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011), *quoting* Williams v. Gerber Products Co., 523 F.3d at 939 n.3. As such, these statements cannot be divorced from the specific representations on the jerky treats packaging and on Defendants' websites that have the potential to deceive and thus remain viable. See id. See also Franklin Fueling Sys., Inc. v. Veeder–Root Co., 2009 WL 2462505, at *7 (E.D. Cal. 2009) ("[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery").

### c. The Pleading Requirements of Fed. R. Civ. P. 9(b)

### (1) The Falsity of Defendants' Representations

Defendants argue that Plaintiff's CLRA, FAL and UCL claims should be dismissed because Plaintiff has not plead the falsity of Defendants' alleged misrepresentations with the specificity required under Federal Rule of Civil Procedure 9(b).

> Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Fraud allegations must "be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).
>
> To meet this standard, the pleading must provide "the who, what, when, where, and how of the misconduct charged." *Id.* (citations and quotations omitted). A plaintiff must set forth "what is false or misleading about a statement and why it is false." *Id.* at 1106 (citations and quotations omitted).

True v. American Honda Motor Co., 520 F. Supp. 2d 1175, 1179 (C.D. Cal. 2007). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

Here, Plaintiff has alleged that Defendants (the who), have engaged in conduct since at least November 2011 (the when), whereby they have made misrepresentations on the jerky treat packaging and on their websites (the where), that their products are wholesome, natural, 100% real and healthy, which is likely to deceive the public (the what), in that the representations are false because the jerky treats are contaminated and dangerous (the how). See C.A. No. 13-518: ECF No. 1-1, ¶¶ 2, 5, 14-19, 21-24, 50, 51, 56, 58, 60-61, 75-77, 81. These allegations appear specific enough to apprise Defendants of the particular misconduct with which they are being charged and thus satisfy the heightened pleading standard set forth in Rule 9(b). See Ang v. Bimbo Bakeries USA, Inc., 2013 WL 5407039, at *3 (N.D. Cal. Sept. 25, 2013) (finding that,

under the approach taken by courts in the Northern District of California, similar allegations regarding food misbranding and mislabeling sufficient under Rule 9(b)).

### (2) Reliance

Defendants also argue that Plaintiff's claims brought pursuant to the CLRA, the FLA and the UCL should be dismissed because she has failed to adequately plead reliance with the required specificity.

As previously discussed, in order to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), the who, what, when, where, and how of the misconduct charged must be alleged, as well as what is false or misleading about a statement and why it is false. True v. American Honda Motor Co., Inc., 520 F. Supp. 2d at 1179. In addition, the plaintiff must also specifically allege that the fraudulent conduct caused them injury. In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d 880, 925 (C.D. Cal. 2012), *citing* In re Tobacco II Cases, 46 Cal. 4th 298, 327, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009). That is, a plaintiff must show that "the misrepresentation was an 'immediate cause' of injury and that, but for the fraudulent statements, 'the plaintiffs in all reasonable probability would not have engaged in the injury-producing conduct.'" Id., *quoting* In re Tobacco II, 46 Cal.4th at 326. See True v. American Honda Motor Co., Inc., 520 F. Supp. 2d at 1182 (under California law, "causation, in the form of reliance" is an essential element of claims for false advertising). See also In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d at 925, *quoting* Kwikset Corp. v. Superior Court, 51 Cal. 4th 298, 326–27, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011) ("[b]ecause 'reliance is the causal mechanism of fraud,' a plaintiff 'proceeding on a claim of misrepresentation . . . must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud

actions'").[2] "This threshold is met where a plaintiff alleges 'he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made.'" In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d at 925, *quoting* Kwikset Corp. v. Superior Court, 51 Cal. 4th at 327 n.10. "A plaintiff is entitled to a presumption of reliance, however, when the alleged misrepresentation is 'material. . . . 'A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did.'" True v. American Honda Motor Co., 520 F. Supp. 2d at 1182, *quoting* Caro v. Proctor & Gamble Co., 18 Cal. App. 4th 644, 668 (1993). See id. at 1182-83 (the "inferred reliance principal," where the misrepresentation is material, applies to the reliance/causation element under the CLRA, the UCL and the FAL).

In the instant case, Plaintiff has alleged in the Complaint that she purchased jerky treats for her dog in reliance on Defendants' representations on the product label that the treats are 100% real home-style dog treats made from quality ingredients and that neither she nor any reasonable person would have purchased the jerky treats had she known the treats were contaminated or if Defendants had provided information about the likelihood of contaminants being found in the jerky treats. C.A. No. 13-518: ECF No. 1-1, ¶¶ 27, 56, 57, 59. In this Court's view, these assertions provide a sufficient basis to infer that Plaintiff purchased the jerky treats because of Defendants' alleged misrepresentations on the packaging that the treats were 100% real and made with quality ingredients or, stated differently, that she would not have purchased the jerky treats absent Defendants' representations. Plaintiff therefore has satisfied the pleading

---

[2] "To state a claim for fraud, a plaintiff must allege: (1) a misrepresentation by false representation, concealment, or nondisclosure, (2) defendant's knowledge of the falsity, (3) defendant's intent to induce reliance, (4) justifiable reliance by Plaintiff, (5) and resulting damage to Plaintiff, all to the satisfaction of Rule 9(b)." Kearns v. Ford Motor Co., 567 F.3d at 1126.

requirements of Fed. R. Civ. P. 9(b) and Defendants' Motion in this regard is properly denied. See True v. American Honda Motor Co., 520 F. Supp. 2d at 1183 (finding that the plaintiff's allegations that the defendant's advertisement induced the plaintiff to purchase the vehicle were sufficient at the pleading stage as the plaintiff's knowledge and state of mind are not subject to Rule 9(b)).

### 3. Unjust Enrichment

Plaintiff also brings a claim for unjust enrichment against Defendants at Count VI of the Complaint alleging that, because Defendants have retained the revenues derived from the sale of the allegedly defective jerky treats to Plaintiff and members of the putative class, Defendants have been unjustly enriched. Defendants contend that this claim should be dismissed because unjust enrichment is not a separate cause of action under California law, and that Plaintiff's claim is nevertheless duplicative of her statutory claims. Plaintiff, on the other hand, has cited to several cases that have found claims for unjust enrichment to be synonymous with claims for restitution and have permitted such claims to proceed. See Hirsch v. Bank of America, 107 Cal. App. 4th 708 (2003); Dinosaur Dev., Inc. v. White, 216 Cal. App. 3d 1310 (1989); DSU Aviation, LLC v. PCMT Aviation, LLC, 2007 WL 3456564 (N.D. Cal. Nov. 14, 2007).

It cannot be disputed that there is little consensus amongst either state or federal courts as to whether California recognizes a separate cause of action for unjust enrichment. While some courts have allowed the claim to go forward based on a quasi-contract theory, others -- and seemingly the majority -- have declined to recognize a claim for unjust enrichment either because the claim is, in essence, one for restitution or because it is duplicative of the plaintiff's statutory or tort claims. See Ogden v. Bumble Bee Foods, LLC, 2014 WL 27527, at *12 (N.D. Cal. Jan. 2, 2014) (citing cases); Anderson v. U.S. Bank, N.A., 2014 WL 47087, at *8 (N.D. Cal.

14

Jan. 6, 2014) (same); Pardini v. Unilever United States, Inc., ___ F. Supp. 2d ___, 2013 WL 3456872, at *8 (N.D. Cal. July 9, 2013) (same); Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (same). The undersigned finds the latter line of cases persuasive particularly as Plaintiff has not argued that the claim should go forward under a quasi-contract theory, and it is evident from the allegations in the Complaint that Plaintiff is seeking restitution for the loss of monies incurred by her and the putative class members as a result of purchasing the jerky treats. See C.A. No. 13-518: ECF No. 1-1, p. 3 ¶7; p. 17 ¶86; p. 21 ¶4; p. 22, ¶7. Moreover, not only does Plaintiff's claim of unjust enrichment rest on the same facts upon which her statutory claims are based, but each of the statutes under which she is proceeding provide for restitution. See Ogden v. Bumble Bee Foods, LLC, 2014 WL 27527, at *12, *quoting* Colgan v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 696 (2006) ("The UCL, FAL, and CLRA authorize courts to award restitution as 'may be necessary to restore to any person in interest any money or property ... which may have been acquired by means of [an] unfair or deceptive act'"). Under these circumstances, it appears that Plaintiff's claim for unjust enrichment is properly dismissed.

    **4.**  **North Carolina's UDTPA**

Defendants argue that Plaintiff's claim brought pursuant to the UDTPA at Count II of the Complaint should be dismissed because she has failed to plead actual reliance or that the alleged misrepresentation proximately caused her injury. See Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009) (to state a claim under the UDTPA, a plaintiff must allege, *inter alia,* that the allegedly deceptive act proximately caused actual injury to the plaintiff).

The Court, however, has already found that Plaintiff has properly plead reliance with respect to her claims brought pursuant to California' consumer protection statutes. Because the

15

discussion is equally applicable to North Carolina's UDTPA, the Court need not revisit the issue here and Defendants' Motion in this regard is properly denied. See Discussion, supra, Section II.C.2.c.(2).

### 5. The Magnuson-Moss Warranty Act

Lastly, Defendants ask that Plaintiff's claim brought pursuant to the Magnuson-Moss Warranty Act at Count V of the Complaint, be dismissed. Defendants argue that because the claim, in which Plaintiff has alleged that the jerky treats were not fit for their intended purpose, is necessarily based on a breach of the implied warranty of merchantability, privity of contract is required. Because Plaintiff is an "end consumer" having purchased the jerky treats from a retailer, Defendants argue that Plaintiff is not in privity with them and thus has failed to state claim. See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008); Blanco v. Baker Healthcare Corp., 158 Cal. App. 4th 1039, 1058, 70 Cal. Rptr. 3d 566 (2008). In so arguing, Defendants recognize that the rule requiring privity does not apply where a plaintiff relies on written labels or advertisements of a manufacturer or where the product is "foodstuffs," but contend that the exceptions do not apply here because the former exception only applies to *express* warranties, and the latter only applies to foodstuffs for *human* consumption, neither of which is at issue in this case.

Plaintiff does not dispute that she seeks relief under the Magnuson-Moss Warranty Act for breach of an implied warranty of merchantability or that privity of contract is generally required in such an action. Nor does Plaintiff contest Defendants' argument that she has no privity with Defendants. Rather, Plaintiff contends, contrary to Defendants' assertion, that both of the cited exceptions to the rule apply.

Plaintiff does not present a compelling argument with respect to the express warranty exception having cited to, and quoted from, the very case relied upon by Defendants which held that "the other exception, where representations are made by means of labels or advertisements, is applicable only to *express* warranties." Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 696, 268 P.2d 1041 (1954) (emphasis added). See Blennis v. Hewlwtt-Packard Co., 2008 WL 818526, at *4 (N.D. Cal. Mar. 25, 2008).

The Court, however, finds that this case is properly categorized as one involving foodstuffs and that the second exception to the privity of contract requirement is applicable. In arguing to the contrary, Defendants cite to Burr v. Sherwin Williams Co., 42 Cal. 2d at 695, wherein the Court simply noted that courts in California have recognized several exceptions to the privity rule including cases involving foodstuffs, and then cited two cases where it was held that "an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract." Id., *citing* Klein v. Duchess Sandwich Co., 14 Cal. 2d 272, 93 P.2d 799 (1939); Vaccarezza v. Sanguinetti, 71 Cal. App. 2d 687, 163 P.2d 470 (1945). Because the product at issue in Burr was an insecticide, the Court did not discuss these cases or the foodstuffs exception because it clearly did not apply.

Moreover, review of Klein and Vaccarezza, the cases cited by the Court in Burr, show that the products at issue in those cases were in fact foodstuffs for human consumption, *i.e.*, a sandwich infected with maggots and contaminated salami. Consequently, there was no need for the Court to discuss or elaborate on the often cited rule that no privity is required to find an implied warranty of merchantability exists where foodstuffs for human consumption is involved. Although it is likely that the exception was created to protect humans from tainted or defective food products, this Court has found no cases that have definitively rejected its application to food

17

consumed by animals, particularly household pets, and Defendants have not cited to one. There does, however, seem to be some support, albeit neither recent nor binding on this Court, for a contrary conclusion. See Midwest Game Co. v. M. F. A. Milling Co., 320 S.W.2d 547, 550-51 (Mo. 1959) (rejecting the defendant's argument that an implied warranty of fitness does not apply to the sale of food for animals and finding that the warranty should apply to cases where the food is not in a raw state but has been processed and packaged by the manufacturer); Larson v. Farmers' Warehouse Co., 161 Wash. 640, 646-47, 297 P. 753 (1931) (finding that the defendant-seller was liable to the plaintiff-buyer for breaching an implied warranty that hay sold for feeding livestock was free of deleterious substances poisonous to stock). Under these circumstances, it would appear that the jerky treats are properly considered foodstuffs for which no privity of contract is necessary to proceed on a claim for breach of an implied warranty of merchantability under the Magnuson-Moss Warranty Act. As such, Defendants' Motion in this respect should be denied.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss submitted on behalf of Defendants, ECF No. 70, be granted as to Plaintiff's claim for unjust enrichment brought at Count VI of the Complaint and denied in all other respects.[3]

---

[3] The Court notes here that as a final argument, presented on the last page of their Memorandum of Law in Support of Motion to Dismiss, Defendants argue that discovery in this case should be stayed pending the Court's decision on the very Motion to Dismiss in which it presented the argument. C.A. No. 12-1011: ECF No. 71, p. 16. The issue therefore was not before the Court until it was poised to address the Motion to Dismiss - five months after it was filed. It seems the better course would have been to file a separate motion so that the Court could address the issue in a timely manner since, with the filing of this Report and Recommendation, the issue is largely moot. That having been said, it nevertheless appears that Defendants' argument is misplaced. Defendants' only basis for a stay of discovery in this case is that this Court found a stay warranted in the Lead Case (Mazur) pending the resolution of a motion to dismiss filed by Defendants. See id. at ECF No. 44. The Memorandum Order issued by the undersigned to which Defendants refer, however, addressed Plaintiff's Motion for Leave to *Commence* Limited Discovery which was denied. Id. See id. at ECF No. 39 (emphasis added). Because discovery had not yet begun there was, in essence, nothing to stay. Accordingly, this Court's concededly superfluous language at the end of the Memorandum Order staying all discovery pending the resolution of the pending motion to dismiss, does not provide the basis for staying discovery in this case which, like in Mazur, has yet to begin.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

    Respectfully submitted,

    <u>/s/ Maureen P. Kelly</u>
    MAUREEN P. KELLY
    UNITED STATES MAGISTRATE JUDGE

Dated: February 11, 2014

cc:    The Honorable Cathy Bissoon
      United States District Judge

      All counsel of record by Notice of Electronic Filing