IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Milo's Kitchen Dog Treats Consolidated Cases, | )<br>)<br>) Civil Action No. 12-1011<br>)<br>) Judge Cathy Bissoon<br>) Magistrate Judge Maureen P. Kelly<br>)<br>) Re: ECF No. 177<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Presently before the Court is Defendants' Motion to Compel Unredacted Facebook Data File and Production of Username and Password, ECF No. 177, in which Defendants seek an order compelling Plaintiff Lisa Mazur ("Plaintiff" or "Mazur") to produce her entire Facebook data file without any limitations whatsoever. Defendants argue that they are entitled to a complete production of Mazur's Facebook data file because prior to her filing the Complaint in this matter, and at a time when her Facebook account was publicly available, Mazur posted a Facebook entry in which she blamed Nestle/Purina's Waggin Train Chicken Jerky, and not Defendants' chicken jerky treats, for the harm to her dog. Defendants contend that because the entry is highly relevant to Plaintiff's claims, and because Plaintiff has denied that she purchased any treats other than Milo's treats, Defendants are somehow entitled to limitless access to her Facebook account. The Court disagrees.

The scope of discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any

> nonprivileged matter that is relevant to any party's claim or defense—
> including the existence, description, nature, custody, condition, and location
> of any documents or other tangible things and the identity and location of
> persons who know of any discoverable matter. For good cause, the court
> may order discovery of any matter relevant to the subject matter involved in
> the action. Relevant information need not be admissible at trial if the
> discovery appears reasonably calculated to lead to the discovery of
> admissible evidence.

Fed.R.Civ.P. 26(b)(1). Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment. A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b) (1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Furthermore, Fed. R. Civ. P. 34(b)(1)(A) provides that a request "must describe with reasonable particularity each item or category of items to be inspected." Id. "All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." In re Asbestos Products Liab. Litig. (No. VI), 256 F.R.D. 151, 157 (E.D. Pa. 2009), citing Frank v. Tinicum Metal Co., 11 F.R.D. 83, 85 (E.D. Pa.1950) ("a blanket request ... for the production of all books and records related to the subject matter is obviously too general and indefinite to be granted").

In the instant case, based on the discovery of the posting on Plaintiff's Facebook page in which she indicated that another brand of chicken jerky dog treats caused the harm to her dog,

2

Defendants were of the belief that there could be other relevant information on Plaintiff's Facebook account. Defendants sought that information in their Second Request for the Production of Documents asking Mazur to produce "the Facebook Data and Facebook Data File of Lisa Mazur and/or Lisa Pierwsza Mazur." ECF No. 178-1, p. 12. Notwithstanding the fact that Defendants' request had no limitations whatsoever, even as to date, and thus were objected to by Plaintiff as inherently overbroad, Plaintiff nevertheless responded to the request. As Defendants acknowledge in their brief filed in support of the instant Motion to Compel, Plaintiff provided "648 pages of Facebook data," albeit redacted; data indicating that "Plaintiff likely purchased a jerky treat product other than the one at issue in this litigation;" "texts of various Facebook entries;" "conversations between Plaintiff and a third-party (Kristyn Corcoran) regarding the instant suit;" and "a significant number of comments with respect to chicken jerky." ECF No. 178, pp, 2, 4, 9. Plaintiff and/or her counsel has represented that she redacted other portions of her Facebook account that were irrelevant and/or immaterial to this lawsuit. For instance, Plaintiff, who apparently has a family member who is attending the Citadel, points to conversations that were redacted between herself and fellow Citadel parents regarding the stresses and concerns that "come alongside." ECF No. 178-1, p. 27. Because Defendants are only entitled to discover information that is relevant to any parties' claim or defenses, the Court finds nothing improper about Plaintiff's redaction of this conversation or other immaterial portions of her Facebook data.

Defendants nevertheless argue that it was improper for Plaintiff to unilaterally decide what should be redacted complaining that the location of certain redactions are "suspect," and that any objections to producing Plaintiff's entire Facebook file on privacy grounds or because it would be burdensome are unfounded given the protective order entered by the Court and the fact

3

that Plaintiff has already produced the entire file -- albeit redacted. Defendants also argue that no attorney-client privilege exists with respects to Plaintiff's communications with Kristen Corcoran ("Corcoran"). Defendants then conclude that they are entitled to unfettered access to Plaintiff's Facebook account including her username and password. In so arguing, Defendants rely largely on <u>Largent v. Reed</u>, 2011 WL 5632688 (Pa. Ct. Com. Pl. Nov. 8, 2011), <u>Zimmerman v. Weis Markets, Inc.</u>, 2011 WL 2065410 (Pa. Ct. Com. Pl. May 19, 2011), and <u>McMillan v. Hummingbird Speedway, Inc.</u>, 2010 WL 4403285 (Pa. Ct. Com. Pl. Sept. 9, 2010), and suggests that these cases stand for the proposition that Facebook accounts are always subject to unrestricted access once a threshold showing of relevance has been made. These cases, however, are factually distinguishable from the instant case and, in this Court's view, do not require the limitless access to Plaintiff's Facebook account data advocated by Defendants.

In <u>Largent</u>, for instance,[1] the plaintiff filed suit following a chain-reaction auto accident claiming that she suffered serious and permanent physical and mental injuries. During the plaintiff's deposition it was discovered that she had a Facebook account and that certain posts appearing therein, including pictures of the plaintiff "enjoying life with her family" and an update about going to the gym, seemingly contradicted her claim that she suffered severe injuries. The plaintiff nevertheless refused to disclose any of her Facebook data arguing that the information sought was irrelevant, and thus did not meet the threshold requirement under the Pennsylvania Rules of Civil Procedure. The plaintiff also argued that disclosure of her Facebook account access information would cause unreasonable embarrassment and annoyance, and that disclosure may violate privacy laws. <u>Id.</u> The defendant consequently filed a Motion to Compel the plaintiff to disclose the Facebook username and password so that the defendant could access

---

[1] Because the facts in <u>Zimmerman</u> and <u>McMillan</u> are similar to those at issue in <u>Largent</u>, the Court's discussion of <u>Largent</u> is equally applicable to those cases.

4

the plaintiff's account.

The Court granted the requested relief finding that the defendant satisfied the threshold relevancy requirement as the information identified was clearly relevant to the plaintiff's averments regarding the injuries she sustained and her claim for damages. Id. The Court also found that, by its very nature, there is no reasonable expectation of privacy in information posted on Facebook and that making a Facebook page "private" does not shield it from discovery if the information sought is relevant. Id. Finally, the Court rejected the plaintiff's claims that divulging her Facebook account information would cause unreasonable embarrassment and/or annoyance stating that bald assertions of embarrassment are insufficient and that any annoyances were vitiated by the fact that the defendant would bear the cost of inspecting the plaintiff's Facebook data and that the plaintiff would be able to access her account during the investigation. The Court also reiterated that the plaintiff had put her physical and mental health at issue and thus had no privacy rights in the Facebook postings. Id.

Here, Mazur does not challenge Defendants' request for further production of her Facebook account data on privacy grounds or because doing so would be particularly burdensome. Nor does Mazur dispute that her posting, in which she indicated that jerky treats other than those at issue in this case caused the harm to her dog, satisfies Defendants threshold relevancy requirement. Indeed, having met that requirement, Plaintiff, unlike the plaintiff in Largent, responded to Defendants' discovery request regarding Plaintiff's Facebook account and provided information relevant to Plaintiff's case.

Further, as argued by Plaintiff, having already provided Defendants with Facebook data relevant to the case, Defendants have failed to make any showing that further production of her Facebook records would result in the dissemination of any more relevant information than has

5

already been provided. Nor have Defendants provided any basis for questioning counsel's assessment of relevance. Indeed, it appears that counsel for Plaintiff not only took pains to include even borderline entries and un-redacted certain data in an effort to show the absence of materiality, but he has represented, and the Court has no reason to doubt, that the redactions were made in good faith and that the information that remains redacted has nothing to do with the claims or defenses raised in this case. See ECF No. 178-1, pp. 18, 27 (indicating that Plaintiff included material regarding "animal rescue" and removed the redactions from most of the conversations between Mazur and Corcoran revealing discussions regarding their pets and jockey and football games). See also Silva v. Dick's Sporting Goods, Inc., 2015 WL 1275840, at *2 (D. Conn. Mar. 19, 2015) (crediting Plaintiff's assurances that not all of his Facebook messages are relevant to the case and finding "no reason to believe, contrary to Defendant's assertions, that redactions made mid-sentence, or heavy redactions on certain pages, are an effort on Plaintiff's part to flout discovery rules"); Ogden v. All-State Career Sch., 299 F.R.D. 446, 450 (W.D. Pa. 2014) ("[o]rdering plaintiff to permit access to or produce complete copies of his social networking accounts would permit defendant to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable. Defendant is no more entitled to such unfettered access to plaintiff's personal email and social networking communications than it is to rummage through the desk drawers and closets in plaintiff's home"); Smith v. Hillshire Brands, 2014 WL 2804188, at *4 (D. Kan. June 20, 2014) ("[i]nformation on social networking sites is not entitled to special protection, but a discovery request seeking it nevertheless must meet Fed.R.Civ.P. 26's requirement that it be tailored so that it appears reasonably calculated to lead to the discovery of admissible evidence. Otherwise, the Defendant would be allowed to engage in the proverbial fishing expedition, in the hope that there

might be something of relevance in Plaintiff's [social networking] account[s]") (footnote & internal quotations and citations omitted); Bosh v. Cherokee Cnty. Governmental Bldg. Auth., 2013 WL 615 0799, at *4 (E.D. Okla. Nov. 22, 2013) (denying the plaintiff's request for additional Facebook discovery finding that "[w]hile the Court is sensitive to Plaintiff's concerns . . . Plaintiff has presented the Court with no reason to believe Defendant Chronister or his counsel of record, who is an officer of this Court in good standing, will neglect their legal or ethical obligations to faithfully comply with this Court's orders").[2]

Moreover, in Largent, the plaintiff's claims of severe and permanent mental and physical injuries would seemingly affect almost every aspect of her life and likely be reflected in much, if not all, of her Facebook data. No such claims are at issue here and thus Largent (nor Zimmerman or McMillan) support a finding that disclosure of Plaintiff's entire Facebook file or her username and password is appropriate. Under these circumstances, the Court finds not only that unfettered access to Plaintiff's Facebook data, particularly her access information, is not warranted but that Defendants have received all the discovery relative to Plaintiff's Facebook account to which they are entitled, with perhaps one exception.

As previously discussed, Plaintiff has apparently redacted a particular conversation she had with Corcoran who is purported to be a putative class member in this case. Plaintiff contends that because their conversation revolved around "specific advice given by class counsel as to the litigation and its progress," it is subject to the attorney-client privilege under the common interest doctrine. ECF No. 178-1, p. 28.

"The common interest doctrine is an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information with a third party." Katz v. AT&T

---

[2] It should also be pointed out that of the 648 page Facebook file there appears to be only eleven pages or portions thereof that remain redacted. See ECF No. 178-1, pp. 27-28.

Corp., 191 F.R.D. 433, 436-37 (E.D. Pa. 2000). See In re Teleglobe Commc'ns Corp., 493 F.3d 345, 361 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ("[d]isclosing a communication to a third party unquestionably waives the privilege"). The common interest privilege protects from disclosure communications made by parties with a common interest to each other in furtherance of a joint defense to litigation. Rosser Int'l, Inc. v. Walter P. Moore & Associates, Inc., 2013 WL 3989437, at *14 (W.D. Pa. Aug. 2, 2013). See In re Teleglobe Communications Corp., 493 F.3d 345 (3d Cir.2007). To invoke the joint defense agreement or common interest privilege the party asserting the privilege must demonstrate that: (1) the parties have agreed to a joint defense effort; (2) the parties have a common-interest in the litigation or a jointly shared litigation strategy; (3) the communications were made pursuant to such agreement; and (4) the continued confidentiality of the communications, i.e., the communications were not disclosed to other third parties such that the privileges were waived. Rosser Int'l, Inc. v. Walter P. Moore & Associates, Inc., 2013 WL 3989437, at *19. See Serrano v. Chesapeake Appalachia, 298 F.R.D. 271, 284 (W.D. Pa. 2014).

Here, it is not at all clear to the Court that Plaintiff has satisfied these factors so as to invoke the common interest doctrine. As far as the Court is able to discern, the only reference to Corcoran as having an interest in this case appears in a communication sent by Plaintiff's counsel to Defendants' counsel explaining the references to privileged information in the privilege log wherein Plaintiff's counsel refers to Corcoran as a class member. ECF No. 178-1, p. 28. The class, however, has not been certified in this case and Plaintiff has not argued or provided anything to the Court which would permit the finding that Corcoran is actually member of the putative class; that Corcoran has an actual common interest in the litigation; that she, Mazur and counsel have agreed to a joint defense effort or share a litigation strategy; or that

8

Mazur's communications to Corcoran were made pursuant to such agreement. Merely stating that Corcoran is a class member and thus the privilege applies is not sufficient.

This notwithstanding, out of an abundance of caution, the Court finds that the best course is to have Plaintiff produce the claimed privileged documents to the Court so that an *in camera* inspection can be conducted. In this manner, any truly privileged information will remain protected and Defendants can proceed confident that they have received all the relevant and non-privileged information from Plaintiff's Facebook data.

Accordingly, the following Order is entered:

AND NOW, this 14th day of April, 2015, upon consideration of Defendants' Motion to Compel Unredacted Facebook Data File and Production of Username and Password, ECF No. 177, and Plaintiff's Response in Opposition to Motion to Compel, ECF No. 182, IT IS HEREBY ORDERED that Defendants' Motion is DENIED. IT IS FURTHER ORDERED, however, that Plaintiff is to provide the Court with the unredacted pages of Plaintiff's Facebook account relative to communication with Ms. Corcoran for which the attorney-client privilege has been asserted and shall do so on or before April 28, 2015..

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order. Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street,

Room 3110, Pittsburgh, PA 15219.  Failure to file a timely appeal will constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Cathy Bissoon
United States District Judge

All counsel of record via CM/ECF